UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSIE DETRIS,

        Plaintiff,

v.                                        Case No.:  8:12-cv-195-T-24-TGW

JIM COATS, as Sheriff of Pinellas County,
in his individual and official capacity,
REGINALD CAMPBELL, Pinellas County
Sheriff's Deputy in his individual capacity,
HAL WHITE, Pinellas County Sheriff's
Deputy in his individual capacity,
JEFFREY FROST, Pinellas County Sheriff's
Deputy in his individual capacity,
JOHN TOURNAI, Pinellas County Sheriff's
Deputy in his individual capacity, and
R. KEY, Pinellas County Sheriff's Deputy in
his individual capacity,

        Defendants.
_____/

## O R D E R

This cause comes before the Court on a Motion to Dismiss filed by Defendant Jim Coats,

Sheriff of Pinellas County, and by Defendants Reginald Campbell, Hal White, Jeffrey Frost,

John Tournai, and R. Key, who are Pinellas County Sheriff Deputies.  (Dkt. 7.)  Plaintiff Jessie

Detris filed a response in opposition to the motion.  (Dkt. 13.)

## I.      Background

In this case, Plaintiff Jessie Detris alleges that his constitutional rights were violated

when excessive force was used against him, when he was being held as a pretrial detainee in the

Pinellas County Jail.  He sued Pinellas County Sheriff Jim Coats in his individual and official

capacities, and five Pinellas County Deputy Sheriffs in their individual capacities.

Plaintiff alleges the following concerning the incident that gives rise to his complaint: On January 17, 2009, Plaintiff was arrested for driving under the influence.  He was handcuffed and taken to the Pinellas County Jail.  While in a holding cell, the handcuffs began cutting into Plaintiff's skin, which interfered with the blood circulation in his wrists and became painful. Plaintiff called out to officers in the nearby booking area for assistance, but they were unable to hear him.

Plaintiff then used his foot to tap on the door to get the officers' attention.  When it was apparent that his tapping did not catch anyone's attention, Plaintiff increased the tapping to knocking.  Deputy Sheriff Campbell came to the door and shouted to Plaintiff "to stop kicking the door or be put in the strap-down chair," and walked away.  Plaintiff tapped the door again to stop Campbell from leaving.

Next, Deputy Sheriff Key opened the door to the holding cell.  Deputy Sheriffs Campbell, White, Frost, and Tournai entered the holding cell.  Plaintiff explained that he was diabetic, that the handcuffs were too tight, and that any loss of circulation would adversely affect his condition.  White, Frost, and Tournai, at the direction of Campbell, violently threw Plaintiff into the wall and onto the floor.  The deputies next "piled on top of him, pinning him to the ground."  While Plaintiff was on the floor, one of the deputies knelt on his kidney, causing him to lose control of his bladder, and another wrenched his arms to the side, putting great strain on his shoulder.

White, Frost, and Tournai continued to beat Plaintiff, while Campbell and Key[1] watched. The deputies openly laughed and made "boorish remarks to the Plaintiff about his wet pants."

---

[1]The complaint is silent as to if and when Deputy Sheriff Key entered the holding cell.

2

Next, the deputies instructed Plaintiff to change into a jumpsuit.  About two hours later, Plaintiff was transported via wheelchair into another cell.  During the transport, one of the deputies violently lifted Plaintiff's arms up, further injuring his left shoulder.  Plaintiff asked to see a doctor, who applied ice to Plaintiff's left arm and fitted it with a sling.

Once Plaintiff was released from the Pinellas County Jail, he went to a hospital emergency room where he was treated.  Among other injuries, the emergency room physician diagnosed Plaintiff with abrasions, lacerations, and pain and tenderness in his hips and left shoulder.  Later, Plaintiff had surgery to repair his left shoulder.

On January 30, 2012, Plaintiff filed a twelve-count complaint against the defendants.  In Count I, Plaintiff asserts a claim under 42 U.S.C. § 1983 against Pinellas County Sheriff Jim Coats, in his individual capacity, for supervisory liability as a result of the alleged excessive force used by Deputy Sheriffs White, Frost, and Tournai.  In Count II, Plaintiff asserts a claim for conspiracy under § 1983 against Campbell, White, Frost, and Tournai.  In Count III, Plaintiff asserts a claim for failure to intervene under § 1983 against Campbell and Key.  In Count IV, Plaintiff asserts a claim for excessive force under § 1983 against White, Frost, and Tournai.  In Count V, Plaintiff asserts a common law conspiracy claim against Campbell, White, Frost, and Tournai.  In Count VI, Plaintiff asserts a common law conspiracy claim against Sheriff Coats in his official capacity.  In Count VII, Plaintiff asserts a common law claim for battery or unnecessary use of force against White, Frost, and Tournai.  In Count VIII, Plaintiff asserts a common law claim for battery or unnecessary use of force against Sheriff Coats in his official capacity.  In Count IX, Plaintiff asserts a common law claim for failure to intervene against Campbell and Key.  In Count X, Plaintiff asserts a common law claim for failure to intervene

against Sheriff Coats in his official capacity.  In Count XI, Plaintiff asserts a claim for intentional

infliction of emotional distress against Campbell, White, Frost, Tournai, and Key.  And, finally,

in Count XII, Plaintiff asserts a claim for negligent infliction of emotional distress against

Sheriff Coats in his official capacity.

On June 25, 2012, Defendants moved to dismiss each one of these claims on the grounds

that they are entitled to qualified immunity.

## II.      Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to provide "a short and plain

statement of the claim showing that the pleader is entitled to relief."  To survive a Rule 12(b)(6)

motion to dismiss, the complaint "does not need detailed factual allegations," *Bell Atlantic Corp.

v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), but must "give

the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,"

*Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 28 80 (1957).

Claims arising under 42 U.S.C. § 1983 against individuals entitled to qualified immunity

no longer need to be pled in accordance with a heightened pleadings standard.  *Randall v. Scott*,

610 F.3d 701, 709 (11th Cir. 2010).  Instead, "[p]leadings for § 1983 cases involving defendants

who are able to assert qualified immunity as a defense" must only comply with the standards

described in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  *Id.*  In

applying these standards, a "district court considering a motion to dismiss shall begin by

identifying conclusory allegations that are not entitled to an assumption of truth–legal

conclusions must be supported by factual allegations.  The district court should assume, on a

case-by-case basis, that well pleaded factual allegations are true, and then determine whether

4

they plausibly give rise to an entitlement to relief."  *Id.* at 709-10.

## III.   Discussion

Qualified immunity is an affirmative defense that provides complete protection for public officers sued in their individual capacity who were acting within the scope of their discretionary authority.  *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc); *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001).  "It shields public officers from liability so long as the transgressed right, given the circumstances, was not already clearly established, that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Evans*, 407 F.3d at 1282 (quotations and citations omitted).  "'The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the . . . law.'"  *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority."  *Id.* at 1334 (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)).  Here, Plaintiff does not allege that Defendants were not acting within their discretionary authority.  Indeed, Plaintiff alleges that Defendants' actions were undertaken in the performance of their duties as deputies of the Pinellas County Sheriff's Office.

"Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate."  *Id.*  "The Supreme Court has set forth a two part analysis for determining whether qualified immunity is appropriate."  *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The court must

5

first ask whether the facts alleged show that the defendants' conduct violated a constitutional right. *Id.* And, if so, the court must then ask whether that right was clearly established at the time of the alleged violation. *Id.*

"In order for the law to be 'clearly established,' it must have been developed at the time of the alleged violation in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Thomas*, 261 F.3d at 1170 (quotations and citations omitted). "The pre-existing law must truly compel (not just suggest or allow or raise a question about) the conclusion that what defendant is doing violates federal law *in the circumstances*." *Id.* (quotations and citations omitted). "'[T]he salient question is whether the state of the law at the time of the violation gave the defendants fair warning that their alleged treatment of the plaintiff was unconstitutional.'" *Rehberg v. Paulk*, 611 F.3d 828, 846 (11th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (alterations omitted)).

"This fair and clear notice requirement may be met in three ways: (1) the words of the pertinent federal statute or constitutional provision may be so specific as to clearly establish the law even in total absence of judicial decisions interpreting the law; (2) some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts; and (3) most commonly, when we lack explicit statutory or constitutional pronouncements and broad case holdings, we look to precedential cases that are tied to their particular facts." *Id.* at 846, n.15 (citations and quotations omitted). "When case law is needed, [the court] look[s] to decisions of the U.S. Supreme Court, [the Eleventh Circuit], and, where applicable, the highest court of the pertinent state." *Id.*

6

A.      **Count I**

In Count I, Plaintiff asserts a claim under 42 U.S.C. § 1983 against Pinellas County

Sheriff Jim Coats, in his individual capacity, for supervisory liability as a result of the alleged

excessive force used by White, Frost, and Tournai.  Defendants argue that Sheriff Coats is

entitled to dismissal of this claim based on qualified immunity because Plaintiff has not alleged

facts to show that Sheriff Coats's conduct violated a clearly established constitutional right.  The

Court agrees.

"As a supervisory official, [the sheriff] is only liable under § 1983 for the

unconstitutional acts of his subordinates if he personally participated in the allegedly

unconstitutional conduct, or his actions were causally connected to the alleged constitutional

deprivation."  *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009).  "A casual connection

may be shown by evidence of (1) a custom or policy that results in deliberate indifference to

constitutional rights, (2) facts that support an inference that the supervisor directed the

subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to

stop them from doing so, or (3) a history of widespread abuse that notified the supervisor of the

need to correct the alleged deprivation, but he failed to do so."  *Id.* (quotations, citations, and

alterations omitted).

Plaintiff does not allege that Sheriff Coats personally participated in the alleged

unconstitutional conduct.  Rather, Plaintiff alleges: "While supervising [the deputies], Coats

either one (1) failed to correct widespread violations of constitutional protections or two (2)

initiated a custom or policy that was deliberately indifferent to the Plaintiff's constitutional rights

or three (3) directed [the deputies] to act unconstitutionally or knew they would do so yet failed

7

to stop them." Dkt. 1, at ¶ 87.  This allegation is a mere recital of the elements of the cause of action and does not include any facts to support a claim for supervisory liability.  Plaintiff does not allege any facts that show a custom or policy of deliberate indifference, that show that Sheriff Coats directed the deputies to act unlawfully, or knew they would do so and failed to stop them, or that show that Sheriff Coats ignored a history of widespread abuse.

Plaintiff urges the Court to draw an inference that Sheriff Coats is liable based on the alleged concerted beating of the Plaintiff, reasoning that "four jailers would not act in concert and at once to beat a prisoner for no good reason without either a widespread history of abuse or a custom initiated by Coats that would give the four jailers assurances that such abusive conduct would be tolerated or even approved." Dkt. 13 at p.11.  The Court, however, declines to draw such an inference.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).  "[L]egal conclusions must be supported by factual allegations." *Randall*, 610 F.3d at 709.  Plaintiff has failed to allege any facts that would show a causal connection between Sheriff Coats and the alleged unconstitutional conduct of the deputies. *Bailey v. Hughes*, 815 F. Supp. 2d 1246, 1261 (M.D. Ala. 2011) (dismissing the excessive force claim because plaintiff failed to allege sufficient facts to infer that the supervisory defendants directed corrections officers to act unlawfully).  Accordingly, Count I must be dismissed.

### B.     Count II

In Count II, Plaintiff asserts a claim for conspiracy under § 1983 against Campbell, White, Frost, and Tournai.  Defendants argue that this claim must be dismissed because the law

8

is clearly established that, under the intracorporate conspiracy doctrine, employees of the same entity cannot conspire with one another while acting within the scope of their employment.  The Court agrees.

"The intracorporate conspiracy doctrine holds that the acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy."  *Tozier v. City of Temple Terrace*, No. 8:10-cv-2750-T-33EAJ, 2011 U.S. Dist. LEXIS 101618, at *9-10 (M.D. Fla. Sept. 8, 2011).  "In other words, a corporation cannot conspire with its employees, and its employees cannot conspire among themselves when they are acting within the scope of their employment."  *Id.*  This doctrine applies in civil rights cases, and to government entities.  *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000).  Here, Plaintiff alleges that Campbell, White, Frost, and Tournai are all deputy sheriffs with the Pinellas County Sheriff's Office, and the conduct that forms the basis of the conspiracy is alleged to have occurred when the deputies were performing their duties.  Because the deputies cannot conspire among themselves while acting within the scope of their employment, the doctrine bars this conspiracy claim.  *Rehberg*, 611 F.3d at 854.

The Court rejects Plaintiff's argument that the intracorporate conspiracy doctrine cannot be applied because no "corporation," such as the Pinellas County Sheriff's Office or another governmental entity, is named as a defendant.  The doctrine bars this claim because the acts of the deputy sheriffs are attributed to the Sheriff's Office, thereby negating the multiplicity of actors.

Additionally, Plaintiff's claim is defeated because he failed to allege that Defendants

conspired with anyone outside of the Pinellas County Sheriff's Office.[2]  *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (applying the doctrine to dismiss a conspiracy claim against the city, the city fire chief, and the city manager because "the only two conspirators identified . . . are both City employees; no outsiders are alleged to be involved"); *Rehberg*, 611 F.3d at 854 (applying the doctrine to dismiss a conspiracy claim because "the 'conspiracy' occurred only within a government entity").  Accordingly, Count Two must be dismissed.

### C.   Counts III and IV

In Counts III and IV, Plaintiff alleges that White, Frost, and Tournai used excessive force, and that Campbell and Key failed to intervene, in violation Plaintiff's Fourteenth Amendment rights.  Defendants argue that the excessive force claim must be dismissed because White, Frost, and Tournai are entitled to qualified immunity, and that the failure to intervene claim must be dismissed because Campbell and Key had no duty to intervene.  The Court agrees.

"A jailor's use of force against a pretrial detainee is excessive under the Fourteenth Amendment if it shocks the conscience."  *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (citations and quotations omitted).  "[W]hether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm."  *Bozeman v.*

---

[2]The Court rejects Plaintiff's argument that he stated a valid claim for conspiracy when he alleged that Defendants conspired with unidentified co-conspirators to destroy videotapes of the incident.  Dkt. 1, ¶ 104.  Plaintiff's conclusory, vague, and brief mention of unidentified co-conspirators, which is buried within the complaint, is insufficient to give Defendants fair notice of the claim and the grounds upon which it rests.  Plaintiff has not asserted sufficient facts to allege that outsiders were involved in the incident.

*Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).  In determining whether the force was applied

maliciously and sadistically to cause harm, courts examine: "a) the need for the application of

force; b) the relationship between the need and the amount of force that was used; c) the extent

of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and

inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell*, 559

F.3d at 1217 (quotations and citations omitted).  Courts "give a wide range of deference to prison

officials acting to preserve discipline and security, including when considering decisions made at

the scene of a disturbance." *Id.* (quotations and citations omitted).

Here, Plaintiff alleges that Defendants used force against him after he tapped and

knocked on the door to get the deputies' attention.  Campbell warned Plaintiff that if he did not

stop kicking the door, he would be put in a strap down chair.  Despite this warning, Plaintiff

alleges that he continued to tap the door.  These facts, as alleged by Plaintiff, do not show that

force was used maliciously or sadistically.  Rather they show that the deputies were acting to

preserve discipline and security in the jail.  Additionally, Campbell made an effort to avoid the

use of force by instructing Plaintiff to stop kicking the door and warning him that he would be

disciplined, if he did not stop.  Therefore, Defendants are entitled to qualified immunity because

their use of force was in a good faith effort to restore discipline and not for the purpose of

causing harm. *Bailey v. Hughes*, 815 F. Supp. 2d 1246, 1265-66 (M.D. Ala. 2011) (dismissing

the excessive force claims because the officers' actions were taken "in the interest of maintaining

discipline and security in a correctional facility").

Furthermore, having found that White, Frost, and Tournai did not use excessive force, it

follows that Campbell and Key had no duty to intervene to stop their use of force. *Crenshaw v.*

*Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009) (finding that the defendants had no duty to intervene to stop the use of excessive force because no excessive force was used).[3]   Accordingly, Counts III and IV must be dismissed.

### D.    Counts V and VI

In Counts V and VI, Plaintiff asserts common law conspiracy claims against Campbell, White, Frost, and Tournai, in their individual capacities, and against Sheriff Coats, in his official capacity.   These conspiracy claims are barred by the intracorporate conspiracy doctrine for the same reasons as Count II is barred, as discussed above.   Additionally, Plaintiff concedes that Count VI is due to be dismissed.   Accordingly, Counts V and VI must be dismissed.

### E.    Counts VII and VIII

In Counts VII and VIII, Plaintiff asserts common law claims for battery or unnecessary use of force against White, Frost, and Tournai, in their individual capacities, and against Sheriff Coats, in his official capacity.   Defendants argue that these claims must be dismissed because the deputies' use of force against Plaintiff was justified and not excessive.   The Court agrees.

"In Florida, the tort of battery 'consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent.'"   *Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1314-15 (M.D. Fla. 2010) (quoting *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005)).   An officer is not liable for battery if his use of force is justified and not excessive.   *Btesh v. City of Maitland*, No. 6:10-

---

[3]Furthermore, even if White, Frost, and Tournai are not entitled to qualified immunity on this claim, Count III would still be subject to dismissal because Plaintiff did not allege sufficient facts to support an assertion that Campbell and Key "[were] in a position to intervene yet failed to do so."   *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008).

cv-71-Orl-19DAB, 2011 U.S. Dist. LEXIS 83464, at * 84-87 (M.D. Fla. July 29, 2011).

As discussed above, Defendants' use of force, according to Plaintiff's allegations, was to restore discipline, and was therefore justified.  Furthermore, because the deputies cannot be liable for battery under these alleged facts, Sheriff Coats likewise cannot be held vicariously liable for their actions.  *Id.* at *128 (finding that the officer's employer cannot be vicariously liable for battery if the officer is not liable for battery).[4]  Accordingly, Counts VII and VIII must be dismissed.

**F.      Counts IX and X**

In Counts IX and X, Plaintiff asserts common law claims for failure to intervene against Campbell and Key, in their individual capacities, and against Sheriff Coats, in his official capacity.  Defendants argue that Plaintiff has not alleged sufficient facts to support these claims.  The Court agrees.

"'An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.'" *Hadley*, 526 F.3d at 1330 (quoting *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (alterations omitted) (discussing a failure to intervene claim asserted under § 1983).  "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." *Id.* at 1331.

---

[4]Even if the deputies' conduct constituted excessive force, Count VIII must still be dismissed because Plaintiff alleges in this count that the deputies "were not acting maliciously and sadistically, and were not acting with the intent of causing harm, and were not acting in bad faith." Dkt. 1, at ¶ 154.  An actor is liable for battery if he acts intending to cause contact. *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).  Because the deputies did not act with the intent to cause harm, Plaintiff failed to state a cause of action for battery against Sheriff Coats in Count VIII.

Here, Plaintiff merely makes the conclusory allegation that "Campbell and Key breached their duty to the Plaintiff by failing to intervene when White, Frost and Tournai used unnecessary and excessive force against [him]." Dkt. 1, at ¶ 161.  This allegation is a mere legal conclusion that is not supported by factual assertions, and therefore, is "not entitled to an assumption of truth." *Randall*, 610 F.3d at 709.  Plaintiff failed to allege facts to support the assertion that Campbell and Key owed him a duty, or that they breached that duty.  In fact, as noted above, the complaint does not contain sufficient detail to ascertain when, or if, Key was present in the holding cell and had the opportunity to intervene on Plaintiff's behalf.

This claim fails for the additional reason that because White, Frost, and Tournai did not use excessive force against Plaintiff, Campbell and Key had no duty to intervene to stop the use of force.  Furthermore, because Campbell and Key had no duty to intervene, Sheriff Coats cannot be vicariously liable for their alleged failure to intervene.  Accordingly, Counts IX and X must be dismissed.

### G.     Count XI

In Count XI, Plaintiff asserts a claim for intentional infliction of emotional distress against Campbell, White, Frost, Tournai, and Key.  Defendants argue that this claim must be dismissed because the conduct alleged in the complaint does not rise to the level necessary to sustain this tort.  The Court agrees.

To state a claim for intentional infliction of emotional distress, the plaintiff must allege that "(1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior knowing, or he should have known, that emotional distress would likely result; (2) the conduct was outrageous, that is, it goes beyond all bounds of decency, and is regarded as odious and

14

utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Williams v. City of Daytona Beach*, No. 6:04-cv-1879-ORL-19-KRS, 2005 U.S. Dist. LEXIS 46776, at *22 (M.D. Fla. June 20, 2005). "The issue of whether allegations rise to the required level of outrageous conduct is a question of law, not of fact, and is determined by the Court." *Id.*

The alleged conduct that forms the basis of Count XI is the use of force by White, Frost, and Tournai. However, the Court concludes that neither Defendants' conduct, nor the failure by Campbell and Key to stop such conduct, rises to the level necessary to sustain the tort. *Knudsen v. Higgins,* No. 6:09-cv-1060-Orl-31GJK, 2011 U.S. Dist. LEXIS 42872, at * (M.D. Fla. Apr. 20, 2011) (granting summary judgment because the defendant's conduct of breaking the plaintiff's nose was not outrageous enough to support the intentional infliction of emotional distress claim). Additionally, Defendants' alleged laughter and "boorish remarks" does not rise to the level of outrageous conduct necessary to support this claim. *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 928 (Fla. 4th DCA 2007) (ruling that teasing did not rise to the level of outrageous conduct required to sustain the tort). Accordingly, Count XI must be dismissed.

### H.     Count XII

In Count XII, Plaintiff asserts a claim for negligent infliction of emotional distress against Sheriff Coats in his official capacity. Defendants argue that this claim must be dismissed because Plaintiff has not alleged that Sheriff Coats took any action that might have caused Plaintiff to suffer emotional distress, among other reasons. Plaintiff does not oppose the dismissal of this claim. Accordingly, Count XII must be dismissed.

IV.     **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.  Each of

Plaintiff's claims are dismissed with prejudice.  The Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of September, 2012.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

16